ILLINOIS POWER COMPANY *et al.*, Plaintiffs-Appellants, *v.* ILLINOIS COMMERCE COMMISSION, Defendant-Appellee.

Fifth District   No. 5—84—0036

Opinion filed September 19, 1984.—Rehearing denied October 17, 1984.

Schiff, Hardin & Waite, of Chicago, for appellant Illinois Power Company.

Albert A. Scriber, of Barnhard, Scriber and Koger, of Mt. Carmel, for appellant Mt. Carmel Public Utility Company.

Neil F. Hartigan, Attorney General, of Springfield (Hercules F. Bolos, Special Assistant Attorney General, and Kathleen Nolan, Assistant Attorney General, of counsel), for appellee.

David J. Rosso, Boyd J. Springer, and Michael F. Kerr, all of Isham, Lincoln & Beale, of Chicago, for intervenor Central Illinois Public Service Company.

JUSTICE KARNS delivered the opinion of the court:

This appeal was taken from an order of the circuit court of Wabash County affirming the denial by the Illinois Commerce Commission (Commission) of a proposed merger of Illinois Power Company (Illinois Power) and Mt. Carmel Public Utility Company (Mt. Carmel). (Ill. Rev.

Stat. 1983, ch. 111$^{2/3}$, pars. 72, 73.) The petition, filed on December 7, 1981, sought approval of Illinois Power's proposed acquisition of Mt. Carmel, a small utility company which provided electric energy and natural gas to customers in Wabash and Lawrence counties. On March 10, 1982, the Commission allowed Central Illinois Public Service Company (CIPS), which also desired to acquire Mt. Carmel, to intervene in opposition to the proposed merger.

On November 23, 1982, the Commission entered its order denying Illinois Power's application, concluding, based upon a comparison of acquisition proposals of Illinois Power and CIPS, that the merger of Illinois Power and Mt. Carmel would not be consistent with the public interest. Both Illinois Power and Mt. Carmel appealed the Commission's decision to the circuit court of Wabash County. That court found that the Commission had correctly interpreted section 27 of the Illinois Public Utilities Act (Ill. Rev. Stat. 1983, ch. 111$^{2/3}$, par. 27) as authorizing it to consider viable alternatives in determining whether a proposed merger serves the public interest, and further found that the Commission's determination that the acquisition of Mt. Carmel by Illinois Power would not be consistent with the public interest was not against the manifest weight of the evidence.

Appellants contest the lower court's affirmance of the Commission's decision, asserting three points for review: (1) that the Commission's interpretation of section 27 was legally incorrect; (2) that finding CIPS' acquisition of Mt. Carmel was a viable, mutually exclusive alternative was contrary to the evidence; and (3) that finding Illinois Power's acquisition to be inconsistent with the public interest was against the manifest weight of the evidence.

Our consideration is confined to the first issue, which we perceive to be dispositive and which presents a question of first impression in this State, although other Illinois cases may tangentially touch on the issue presented (see *Klopf v. Illinois Commerce Com.* (1977), 54 Ill. App. 3d 491, 369 N.E.2d 906). Because we agree that an erroneous statutory application prompted the Commission's decision, we reverse.

In its petition to intervene, CIPS requested that the Commission deny approval of Illinois Power's merger plan if the evidence demonstrated that the acquisition of Mt. Carmel by CIPS would *best serve* the public interest. The Commission agreed, declaring that, in deciding whether a public utility merger is in the public interest, "viable, mutually exclusive alternatives should be considered," and that if such an alternative would "better serve the public interest, a proposed merger should not be approved." The Commission then conducted a comparative analysis of Illinois Power and CIPS in light of several factors

deemed pertinent to the public interest in the Mt. Carmel case. The list included contiguity of the properties, simplification of electric service facility planning, fairness and reasonableness to shareholders, interest of ratepayers, and incremental cost of service. In each instance, the Commission comprehensively reviewed the relevant facts presented by both Illinois Power and CIPS. The record fails to show that Illinois Power's application was ever considered independently as compared to the continued operation of Mt. Carmel as a separate utility.

■■■ The purpose of the Public Utilities Act (hereinafter the Act) is to assure provision of efficient and adequate utility service to the public at a reasonable cost. (*Local 777, DUOC, Seafarers International Union of North America v. Illinois Commerce Com.* (1970), 45 Ill. 2d 527, 260 N.E.2d 225.) To that end, the Commission was created and vested with regulatory powers, including the control of certain acts of utility companies affecting the public. (Ill. Rev. Stat. 1983, ch. 111⅔, par. 1 *et seq.*) Because it is a statutory creation, however, and derives its power exclusively from legislative mandate, the Commission may act only in accordance with expressly delegated authority and within the jurisdictional purview granted by the Act. (*City of Chicago v. Illinois Commerce Com.* (1980), 79 Ill. 2d 213, 402 N.E.2d 595; *Liberty Trucking Co. v. Illinois Commerce Com.* (1980), 81 Ill. App. 3d 466, 401 N.E.2d 581; *Black Hawk Motor Transit Co. v. Illinois Commerce Com.* (1947), 398 Ill. 542, 76 N.E.2d 478.) It is our duty on judicial review to reverse those orders of the Commission which unlawfully exceed the scope of its authority. (*Citizens Utilities Co. v. Illinois Commerce Com.* (1971), 50 Ill. 2d 35, 276 N.E.2d 330; *Thompson v. Illinois Commerce Com.* (1953), 1 Ill. 2d 350, 115 N.E.2d 622.) Finally, a reviewing court may inquire into the method used by an administrative agency to achieve the result which is being reexamined. *Union Electric Co. v. Illinois Commerce Com.* (1979), 77 Ill. 2d 364, 376, 396 N.E.2d 510, 516, citing *City of Alton v. Commerce Com.* (1960), 19 Ill. 2d 76, 80, 165 N.E.2d 513, 516.

The Commission's authority to rule upon Illinois Power's petition requires it to ascertain whether the proposed merger is consistent with the public interest. Specifically, the controlling statute provides that "upon the filing of such petition *** if the Commission is satisfied that such petition shall reasonably be granted, *and that the public will be convenienced thereby,* the Commission shall make such order in the premises as it may deem proper and as the circumstances may require, attaching such conditions as it may deem proper, and thereupon it shall be lawful to do the things provided for in such order. ***" (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 111⅔, par. 27.) The statutory

language unambiguously requires the petitioner to demonstrate that the proposed transaction will convenience the public.

In the instant case, the Commission and the parties vying for acquisition of Mt. Carmel agreed that approval should be determined according to consistency with the public interest. Alteration of the literal wording used in the statute does not modify the meaning of its directive. While the Commission's interpretation of its power granted under the statute is entitled to substantial weight and deference (see, e.g., *Illinois Consolidated Telephone Co. v. Illinois Commerce Com.* (1983), 95 Ill. 2d 142, 447 N.E.2d 295), by requiring Illinois Power to prove that its merger proposal was *more* beneficial to the public than that suggested by CIPS, the Commission inserted additional requisites into the statutory standard and therefore exceeded its authority under the Act. The legislature did not delineate an exact formula, because each application potentially poses varying circumstances. One nonvariable factor which must be considered under each set of facts, however, is simply whether the public will be convenienced by the approval of a particular transaction. (*Chicago & North Western Ry. Co. v. Illinois Commerce Com.* (1970), 130 Ill. App. 2d 352, 361, 264 N.E.2d 745, 751.) By restricting its examination of Illinois Power's petition to a comparative analysis, the Commission omitted an essential, statutorily imposed element for consideration. It is imperative, by our reading of the statute, that Illinois Power's petition be appraised independently. We do not require the Commission to operate in an evidentiary vacuum. We believe, however, that the method utilized in the instant case effectively denied Illinois Power its statutory right to be evaluated on its own merits through offering evidence of the public convenience and benefits of its proposal.

In the case at bar, the Commission had available for its review an extensive description of a viable alternative. Our decision does not interfere with the Commission's duty to ascertain and weigh relevant facts; neither does it deny to private ownership the element of choice inherent in a free enterprise system, which we believe the legislature must have contemplated in the drafting of this statute, even in the case of public utility properties, admittedly affected with the public interest. It must be clarified, however, that although the Commission has the discretion to determine, factually, what constitutes "consistent with public interest" (*Brink's, Inc. v. Illinois Commerce Com.* (1981), 103 Ill. App. 3d 851, 857, 431 N.E.2d 1242, 1247), it cannot misapply the law by requiring additional proof in excess of that required by the Act. The restrictive method employed by the Commission in disapproving Illinois Power's petition requires judicial rejection.

■ Moreover, the denial effectively orders a preference for an acquisition by CIPS. The Commission conceded that it lacked authority to order a CIPS-Mt. Carmel merger. By reaching its decision through comparative analysis, the Commission created a fiction, allowing it to exercise powers that it acknowledged it didn't have. Such a selection is impermissible. It follows that the method employed to reach that selection is likewise unlawful.

Section 27 of the Act allows the Commission to attach "such conditions as it may deem proper" to a petition for acquisition of a public utility. It would appear that acquisition by either Illinois Power or CIPS would benefit the Mt. Carmel ratepayers, but that the Commission was concerned that certain provisions of the proposed merger benefiting the principal shareholder and operating officer of Mt. Carmel might not be fair to the minority shareholders of Mt. Carmel, although, under the proposed merger agreement, approval by a majority of the minority shares was required. These concerns, and other matters, were not considered in the context of Illinois Power's petition, only in comparison with an assumed acquisition by CIPS, the details of which were never formalized in any concrete offer by CIPS and which the Commission had no power to order.

■ While the briefs of both parties address in detail a comparison of the benefits to the ratepayers and shareholders of Mt. Carmel, Illinois Power and CIPS, these comparisons are largely based on historical rates and assumptions. Illinois Power has requested this court to reverse the Commission's order disapproving its proposed merger and acquisition of Mt. Carmel as contrary to and unsupported by the evidence. Considering that the Commission only considered Illinois Power's petition as compared to an acquisition of Mt. Carmel by CIPS, we believe that we would usurp the proper office of the Commission were we to undertake what would amount to an original consideration of Illinois Power's petition. This determination is appropriately made by the Commission under a proper application of the standard set out in section 27 of the Act, as admittedly the Commission may consider the alternative of no merger at all.

The decision of the circuit court is reversed, and the case is remanded to the Commission for reconsideration in accordance with the views expressed herein.

Reversed and remanded.

JONES and HARRISON, JJ., concur.